POPE & TALBOT, INC., & SUBSIDIARIES, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 530–93.                    Filed May 8, 1995.

*Grady M. Bolding, James E. Burns, Jr., Russell D. Uzes,* and *Kevin P. Muck,* for petitioner.

*Milton J. Carter, Jr., Christopher D. Hatfield,* and *William McCarthy,* for respondent.

OPINION

RUWE, *Judge:* Respondent determined deficiencies in petitioner's 1985 and 1986 Federal income taxes in the amounts of $17,693,960 and $954,678, respectively. Petitioner has filed a motion for partial summary judgment, and respondent has filed a cross-motion for partial summary judgment. The sole issue presented by these motions is whether gain from the distribution of appreciated property under section 311(d)[1] is determined as if petitioner had sold the property in its entirety for its fair market value, as respondent contends, or by reference to the value of the property interest received by each shareholder, as petitioner contends.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. *Northern Ind. Pub. Serv. Co. v. Commissioner,* 101 T.C. 294, 295 (1993); *Shiosaki v. Commissioner,* 61 T.C. 861, 862 (1974). Rule 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. Rule 121(b) provides that a "decision shall thereafter be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." For purposes of the motions before us, the following facts are undisputed.

Petitioner is a publicly held Delaware corporation with its principal place of business in Portland, Oregon. Petitioner's shares are traded on the New York Stock Exchange. During 1985, petitioner's operations included timber, land development, and resort businesses in the State of Washington.

In October 1985, petitioner's board of directors adopted a "Plan of Distribution". In furtherance of this plan, petitioner's chairman and chief executive officer notified the share-

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

holders of a special meeting to be held on December 4, 1985, stating:

> The purpose of the Special Meeting is to enable the stockholders to vote on a proposed plan to distribute Pope & Talbot's timber and land development properties in the State of Washington to a newly-formed limited partnership which will be owned by the stockholders of Pope & Talbot. The proposed plan, which is described in detail in the enclosed Proxy Statement, has been carefully considered and unanimously approved by the Board of Directors as being in the best interests of the stockholders. The Board of Directors urges your approval of the plan.

On December 4, 1985, petitioner's shareholders approved the plan to transfer the assets from the Washington businesses (the Washington properties) to Pope Resources, a newly formed Delaware limited partnership (the partnership). The partnership was formed with Pope MGP, Inc., and Pope EGP, Inc., newly formed Delaware corporations, as partners. Pope MGP, Inc., was the managing general partner, and Pope EGP, Inc., was a standby general partner. The two corporate partners initially were owned equally by two of petitioner's principal shareholders. Under the plan, Pope MGP, Inc., was to receive partnership units when petitioner transferred the Washington properties to the partnership. Pope MGP, Inc., was then to make a pro rata distribution of the partnership units to petitioner's shareholders.

On December 20, 1985, pursuant to its "Plan of Distribution", petitioner (1) borrowed approximately $22.5 million from Travelers Insurance Co., secured by 71,363 acres of its timberlands located in the State of Washington; (2) transferred all its approximately 78,000 acres of Washington timberlands to the partnership, subject to the Travelers' loan; (3) transferred all its Washington land development and resort business to the partnership; (4) transferred $1.5 million in cash for working capital to the partnership; and (5) sold certain installment note receivables to the partnership for approximately $5 million in cash.

Also on December 20, 1985, Pope MGP, Inc., issued partnership units to each holder of record of petitioner's common stock. At this time, petitioner had approximately 6,000 shareholders. Each shareholder received one partnership unit for every 5 shares of petitioner's common stock. Petitioner was not a partner in Pope Resources and received no partnership units. On December 6, 1985, prior to the effec-

tive date of the "Plan of Distribution", the partnership units began trading on a "when issued basis" on the Pacific Stock Exchange.

Section 311(d)(1) provides:

SEC. 311(d). DISTRIBUTIONS OF APPRECIATED PROPERTY.—

(1) IN GENERAL.—If—

(A) a corporation distributes property (other than an obligation of such corporation) to a shareholder in a distribution to which subpart A applies, and

(B) the fair market value of such property exceeds its adjusted basis (in the hands of the distributing corporation),

then a gain shall be recognized to the distributing corporation in an amount equal to such excess as if the property distributed had been sold at the time of the distribution. * * *

Respondent contends that under section 311(d), the fair market value of the property distributed is determined as if it had been sold in its entirety. Petitioner argues that the fair market value of the property distributed should be determined by reference to the value of the partnership units received by each shareholder.

This is an issue of first impression. It requires us to determine what "property" interest is to be valued for purposes of section 311(d). Is it the entire property interest which is being taken out of corporate solution, or is it the fractional interests received by the shareholders? Each party believes that the statutory language is clear, although they arrive at different results. We, on the other hand, have not been able to achieve such certainty based on the language of the statute. We will therefore resort to the legislative history in order to assist us in interpreting the statutory language.

Subsection (d) was first added to section 311 by the Tax Reform Act of 1969, Pub. L. 91–172, sec. 905(a), 83 Stat. 713. With respect to this amendment, the legislative history provides the following:

Recently, large corporations have redeemed very substantial amounts of their own stock with appreciated property and in this manner have disposed of appreciated property for a corporate purpose *to much the same effect as if the property had been sold and the stock had been redeemed with the proceeds of the sale.* * * *

\* \* \* \* \* \* \*

The committee does not believe that a corporation should be permitted to avoid tax on any appreciated property (investments, inventory, or business property) by disposing of the property in this manner.

\* \* \* The committee amendments provide that if a corporation distributes property to a shareholder in redemption of part or all of his stock and the property has appreciated in value in the hands of the distributing corporation (i.e. the fair market value of the property exceeds its adjusted basis), *then gain is to be recognized to the distributing corporation to the extent of the appreciation.* \* \* \*

[S. Rept. 91–552, at 279 (1969), 1969–3 C.B. 423, 600; emphasis added.]

See also H. Conf. Rept. 91–782, at 333 (1969), 1969–3 C.B. 644, 677; Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1969, at 238 (J. Comm. Print 1970).

As initially enacted by the Tax Reform Act of 1969, a corporation recognized gain under section 311(d) only if it distributed appreciated property in a redemption transaction. This was changed in the Deficit Reduction Act of 1984, Pub. L. 98–369, sec. 54, 98 Stat. 568, which amended section 311(d)(1) by providing that gain shall be recognized if a corporation distributes property to a shareholder in a "distribution to which subpart A applies".[2] Thus, recognition of gain by a corporation was no longer limited to redemption transactions. The reasons for this change were explained in the legislative history as follows:

In many situations, present law permits a corporation to distribute appreciated property to its shareholders without recognizing the gain. In such a case, if the distributee is an individual, the basis of the property will be stepped up without any corporate-level tax having been paid (although the individual shareholder will often have dividend income in an amount equal to the fair market value of the property). The committee believes that under a double-tax system, the distributing corporation generally should be taxed on any appreciation in value of any property distributed in a non-liquidating distribution. *For example, had the corporation sold the property and distributed the proceeds, it would have been taxed. The result should not be different if the corporation distributes the property to its shareholders and the shareholders then sell it.* \* \* \*

\* \* \* \* \* \* \*

Under the bill, gain (but not loss) is generally recognized to the distributing corporation on any ordinary, non-liquidating distribution, whether or not it qualifies as a dividend, of property to which subpart A (secs. 301 through 307) applies as if such property had been sold by the distributing corporation for its fair market value rather than distributed. The general

---

[2] Subpt. A is composed of secs. 301 through 307.

rule applies whether or not there is a redemption of stock. [S. Prt. 98–169 (Vol. 1), at 176–177 (1984) (emphasis added).]

See also H. Rept. 98–432 (Part 2), at 1189–1190 (1984); Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 149–150 (J. Comm. Print 1985).

It is apparent that the purpose underlying section 311(d) was to tax the appreciation in value that had occurred while the distributing corporation held the property and to prevent a corporation from avoiding tax on the inherent gain by distributing such property to its shareholders. To achieve this result, section 311(d)(1) requires the distributing corporation to recognize the difference between the property's adjusted basis and its fair market value "as if the property distributed had been sold at the time of the distribution." The focus of section 311(d)(1) is on the fair market value of property that had appreciated in value. It follows that we must focus on the value of the Washington properties as owned by petitioner and value them as if petitioner had sold them at fair market value at the time of the distribution.

The quantity and quality of property distributed by a corporation on behalf of its shareholders are essential factors to be considered when making a fair market value determination. The property distributed by petitioner was its entire interest in the Washington properties. In a declaration submitted in support of petitioner's motion for partial summary judgment, Donald R. Berry, petitioner's "vice president/ tax management", stated:

[Petitioner] * * * did not distribute undivided interests in the Timber Properties and Development Properties to its shareholders, and as a practical matter could not have done so. If any of the shareholders had decided not to contributed [sic] their interests to the Partnership, then the Partnership would have been a co-tenant of the Timber Properties and Development Properties, without full control and power of disposition over those businesses.

By structuring the transaction so that the property was transferred in its entirety to the partnership, the property remained intact and, theoretically, the partnership could sell the property at fair market value and distribute the proceeds

to its partners (petitioner's shareholders).[3] Had this happened, each of the shareholders would have been able to realize a proportionate share of the full fair market value of the property distributed.[4]

Petitioner, nevertheless, argues that its gain should be determined by reference to the value of the individual partnership units received by each shareholder. In computing its gain under section 311(d)(1), petitioner determined that the fair market value of the property distributed was $40,325,775. Respondent, on the other hand, determined that the fair market value of the property was $115,610,385. Petitioner determined fair market value by reference to the partnership units received by petitioner's shareholders, whereas respondent determined the fair market value as if petitioner had sold its entire interest in the Washington properties. We have made no judgment with respect to the accuracy of these valuations. However, for purposes of the motions before us, if we assume that $40,325,775 is an accurate valuation under petitioner's rationale, and that $115,610,385 is an accurate valuation under respondent's rationale, then $75,284,610 of inherent gain in appreciated property will escape the corporate-level tax. This would undermine the purpose of section 311(d).

Petitioner contends that for purposes of symmetry between sections 301, 302, and 311(d), the "fair market value" of the property distributed by a corporation must be the same as the "fair market value" of the property received by its shareholders. Section 301 provides that the amount of a distribution of property by a corporation with respect to its stock to a noncorporate distributee is the amount of money received, plus the "fair market value" of the other property received.

[3] Some of the properties were to be sold in the ordinary course of the partnership's operations. According to the limited partnership agreement:

The Partnership will engage generally in any and all phases of the businesses of conducting traditional forestry operations and selling timber or logs under cutting contracts or other arrangements, selling undeveloped acreage, developing acreage for sale as improved property, selling developed and undeveloped lots * * *. * * * and maintaining and operating reforestation and transplant nurseries, and in any other business with the exception of the business of granting policies of insurance, or assuming insurance risks or banking * * *.

[4] We would not expect a corporation to knowingly distribute property to its shareholders in a manner that would permanently diminish its value in the hands of its shareholders. The board of directors that recommended the plan owed a fiduciary duty to act in the best interests of the shareholders. *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.,* 506 A.2d 173, 179 (Del. 1986). Indeed, petitioner's distribution plan was unanimously approved by its board of directors as being in the best interests of the stockholders.

Sec. 301(b)(1)(A). Under section 302, a redemption transaction is either treated as an exchange whereby section 1001 applies, or as a distribution of property whereby section 301, outlined above, applies. If the redemption transaction is treated as an exchange, the amount realized is the sum of any money received plus the "fair market value" of the property received. Sec. 1001(b). Respondent does not dispute the theoretical possibility that the value of the property distributed within the meaning of section 311(d) might be greater than the value of the property received by shareholders under sections 301 and 302.

The value of what the shareholders received is not before us, and we express no view on that question. However, we do not view the potential lack of initial symmetry as sufficient reason to abandon our interpretation of section 311(d)(1). In fact, petitioner's position might also result in a lack of symmetry. For example, if petitioner were permitted to determine its gain under section 311(d)(1), based on the lower value of partnership units, and the partnership were to sell the property distributed at full fair market value, the shareholders would recognize the full fair market value of the property as income; i.e., the value of the partnership units *plus* their portion of partnership gain attributable to the appreciation that occurred while the property was in corporate solution. However, in this scenario, petitioner would escape recognition of gain inherent in the Washington properties prior to the distribution. This is what section 311(d)(1) was designed to prevent.

Petitioner contends that the plain meaning of section 311(d)(1) requires that distributions of property be valued by reference to the property received by each shareholder. In support of this contention, petitioner points to the fact that section 311(d)(1)(A) refers to distributions of property made "to a shareholder".[5] We are not convinced that the use of shareholder in the singular supports petitioner's rationale.

Words in a statute used in the singular may apply to the plural as well:

In determining the meaning of any Act of Congress, * * *

---

[5] No argument was made that sec. 311(d)(1) should not apply, because the Washington properties were not conveyed directly "to a shareholder", and it is clear that a conveyance of property to a partnership on behalf of a shareholder falls within the ambit of sec. 311(d)(1).

words importing the singular include and apply to several persons, parties, or things;

words importing the plural include the singular;

[1 U.S.C. sec. 1 (1988); see sec. 7701(h)(1)(1) and (2) (cross-referencing 1 U.S.C. sec. 1).]

In *First Natl. Bank v. Missouri,* 263 U.S. 640, 657 (1924), the Supreme Court stated: "this rule is not one to be applied except where it is necessary to carry out the evident intent of the statute". See also *Metallics Recycling Co. v. Commissioner,* 79 T.C. 730, 738 (1982) ("Thus, whether the rule of 1 U.S.C. sec. 1 is to be applied to section 52(c) depends upon congressional intent in enacting the new jobs credit generally, and section 52(c) particularly."), affd. 732 F.2d 523 (6th Cir. 1984). We have previously concluded that the purpose for enacting section 311(d)(1) was to prevent corporations from avoiding tax on the gain inherent in property distributed to shareholders, and that this purpose could be frustrated if we were to accept petitioner's rationale. Accordingly, we find that the term "shareholder" as used in the singular in section 311(d) may, where appropriate, be used in the plural as well.

Petitioner contends that it is significant that the Tax Reform Act of 1986, Pub. L. 99–514, sec. 631(c), 100 Stat. 2272, changed the phrase "as if the property distributed had been sold at the time of the distribution" to "as if such property were sold to the distributee at its fair market value."[6] The only apparent reason for the 1986 change to section 311 was to conform its language with that of section 336(a), as amended by section 631(a) of the Tax Reform Act of 1986.[7] H. Conf. Rept. 99–841, at II–198 (1986), 1986–3 C.B. (Vol. 4)

---

[6] The Tax Reform Act of 1986, Pub. L. 99–514, sec. 631(c), 100 Stat. 2272, redesignated and amended sec. 311(d)(1) as follows:

SEC. 311(b). DISTRIBUTIONS OF APPRECIATED PROPERTY.—

(1) IN GENERAL.—If—

(A) a corporation distributes property (other than an obligation of such corporation) to a shareholder in a distribution to which subpart A applies, and

(B) the fair market value of such property exceeds its adjusted basis (in the hands of the distributing corporation),

then gain shall be recognized to the distributing corporation as if such property were sold to the distributee at its fair market value.

[7] After the amendments to sec. 336 by the Tax Reform Act of 1986, sec. 336(a), which applies to distributions of property in complete liquidation, provides:

SEC. 336(a). GENERAL RULE.—Except as otherwise provided in this section or section 337, gain or loss shall be recognized to a liquidating corporation on the distribution of property in complete liquidation as if such property were sold to the distributee at its fair market value.

1, 198; see Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 337 (J. Comm. Print 1987) ("the Act generally conforms the treatment of nonliquidating distributions with liquidating distributions").

One of the objectives of the Tax Reform Act of 1986 was to expand the repeal of the doctrine of *General Utilities & Operating Co. v. Helvering,* 296 U.S. 200 (1935), by requiring a corporation making a liquidating distribution of assets to recognize gain. H. Conf. Rept. 99–841, *supra* at II–198, 1986–3 C.B. (Vol. 4) at 198.

The *General Utilities* rule permitted nonrecognition of gain by corporations on certain distributions of appreciated property to their shareholders and on certain liquidating sales of property. Thus, its effect was to allow appreciation in property accruing during the period it was held by a corporation to escape tax at the corporate level. * * * [Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, *supra* at 328; fn. ref. omitted.]

Given the purpose of the Tax Reform Act of 1986, we are not persuaded that the term "distributee" should be read only in the singular, and we believe the rule of 1 U.S.C. sec. 1 (1988) would apply to the term "distributee". We note, however, that section 311, as amended by the Tax Reform Act of 1986, is not before us.

Petitioner argues that the change to section 311 by the Tax Reform Act of 1986 is consistent with an example in the General Explanation of the Deficit Reduction Act of 1984 by the Staff of the Joint Committee on Taxation, evidencing congressional intent that gain on the distributions of property under section 311(d) be determined "as if the distributing corporation had sold the property distributed to the recipient shareholder".[8]

---

[8] The portion of the example quoted by petitioner in its motion is as follows:

Assume that: (1) X, a corporation, has one class of stock outstanding; (2) Y, an individual, owns, and has owned for over 5 years, 85 percent of the outstanding stock of X; (3) X, under subpart A, distributes to Y real property of a character subject to the allowance for depreciation under section 167; (4) at the time of the distribution the fair market value of the property was $2,000 and its basis to the distributing corporation was $1,000; (5) there was no recapture income to X under section 1245 or section 1250 on the distribution of the property; and (6) prior to the distribution the property was used by X in a trade or business acquired within 5 years of the distribution in a taxable transaction. In such a case, X would be treated as if it sold the property to Y. Gain would be recognized on the deemed sale under section 311. * * * [Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 151 (J. Comm. Print 1985).]

The example given by the Joint Committee staff involved the distribution by a corporation of an entire interest in property to a single shareholder. Such a simplistic example does not support petitioner's rationale; i.e., that the value of property transferred in its entirety by a corporation to a partnership on behalf of its shareholders should be determined by the value of partnership interests received by each shareholder. Moreover, the fair market value of the property is given as a fact in the example. See Staff of Joint Comm. on Taxation, General Explanation of the Tax Reform Act of 1986, at 328–329 (J. Comm. Print 1987).

We hold that, under section 311(d)(1), petitioner's gain on the distribution of the Washington properties is to be determined as if petitioner had sold its interest in Washington properties at fair market value on the date of distribution.

*An appropriate order will be issued granting respondent's motion for partial summary judgment and denying petitioner's motion for partial summary judgment.*