T.C. Memo. 1996-205

UNITED STATES TAX COURT

GEORGE M. OSSERMAN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 44576-86.                    Filed April 29, 1996.

George M. Osserman, pro se.

<u>Maureen T. O'Brien</u>, for respondent.


MEMORANDUM OPINION

WOLFE, <u>Special Trial Judge</u>:  This matter is before the Court
on respondent's Motion for Partial Summary Judgment filed under
Rule 121.[1]  Respondent bases her Motion for Partial Summary

---

[1]    All section references are to the Internal Revenue Code in
effect for the years in issue, unless otherwise indicated.  All
Rule references are to the Tax Court Rules of Practice and
                                        (continued...)

Judgment on the pleadings and matters deemed admitted pursuant to

Rule 90(c).  Petitioner has not responded to the pending motion.

In three notices of deficiency dated August 20, 1986,

respondent determined the following deficiencies in and additions

to petitioner's Federal income tax.

|       |            | Additions to Tax | |
| Year  | Deficiency | Sec. 6653(b) | Sec. 6654(a) |
|-------|------------|--------------|--------------|
| 1975  | $134,599   | $67,299      | --           |
| 1976  | 5,050,149  | 2,525,075    | --           |
| 1977  | 7,926,728  | 3,963,364    | $253,655     |
| 1978  | 2,053,106  | 1,026,553    | 65,698       |
| 1979  | 1,076,634  | 538,317      | --           |
| 1980  | 441,711    | 220,855      | --           |
| 1981  | 252,288    | 126,144      | --           |
| 1982  | 325,922    | --           | --           |

Respondent also determined additions to tax for 1982 in the

amount of $32,592 under section 6661 for substantial

understatement of tax, in the amount of $81,480 under section

6651(a) for failure to timely file, in the amount of $16,296

under section 6653(a)(1) for negligence, and under section

6653(a)(2) in an amount equal to 50 percent of the interest due

on the underpayment attributable to negligence.  For the years

1975 through 1982, respondent also determined that interest on

deficiencies accruing after December 31, 1984, would be

calculated at 120 percent of the statutory rate under section

6621(c).[2]

---

[1](...continued)
Procedure.

[2]  The notices of deficiency refer to sec. 6621(d).  This
(continued...)

On February 2, 1990, the parties filed a stipulation of settled issues that resolved some of the issues in dispute. On March 28, 1990, respondent filed a First Request for Admissions (First Request). Respondent mailed her First Request to petitioner at four different addresses, including the address provided by petitioner in the stipulation of settled issues. On April 13, 1990, respondent notified the Court that her First Request had subsequently been mailed to petitioner at still another address in Boca Raton, Florida. Petitioner did not answer or object to respondent's First Request.

On August 3, 1993, respondent filed a Second Request for Admissions (Second Request) and mailed it to petitioner at the Boca Raton address in Florida. Petitioner did not answer or object to respondent's Second Request. By Order dated October 5, 1993, the Court requested petitioner and respondent to file Status Reports with the Court before November 5, 1993.

---

[2](...continued)
section was redesignated as sec. 6621(c) by sec. 1511(c)(1)(A) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2744 and repealed by sec. 7721(b) of the Omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101-239, 103 Stat. 2106, 2399, effective for tax returns due after Dec. 31, 1989, OBRA 89 sec. 7721(d), 103 Stat. 2400. The repeal does not affect the instant case. For simplicity, we will refer to this section as sec. 6621(c). The annual rate of interest under sec. 6621(c) for interest accruing after Dec. 31, 1984, equals 120 percent of the interest payable under sec. 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.

Respondent complied with this Order, but petitioner failed to respond.

On November 23, 1993, respondent filed her Motion for Partial Summary Judgment. Respondent seeks partial summary adjudication of the following issues raised in the notices of deficiency for taxable years 1975 through 1981: (1) That petitioner received other or miscellaneous income during 1976, 1977, and 1978 in the respective amounts of $1,684,916, $2,000,536, and $2,926,612; (2) that petitioner is not entitled to certain losses from the partnerships S-J Minerals Associates III, L.P., and G & O Associates for 1976 and 1977; (3) that petitioner is not entitled to deduct mining losses in the amount of $10 million for each of the years 1977 through 1980, and in the amount of $100,000 for 1981; (4) that petitioner is not entitled to carry forward certain net operating losses to 1976 through 1981; (5) that petitioner is liable for additions to tax for fraud pursuant to section 6653(b) for the taxable years 1975 through 1981; and (6) that assessment is not time barred for the years 1975 through 1981.

Because petitioner failed to respond to respondent's requests for admissions, the facts contained therein are deemed admitted. Rule 90(c); Marshall v. Commissioner, 85 T.C. 267, 272 (1985); Freedson v. Commissioner, 65 T.C. 333, 334-336 (1975), affd. on another issue 565 F.2d 954 (5th Cir. 1978). The

findings of fact herein are based upon our review of the record, in particular petitioner's pleadings and the deemed admissions.

Petitioner resided in Boston, Massachusetts, when his petition was filed. Petitioner practiced law during the 1970's in New York and Massachusetts with Paul Garfinkle (Garfinkle) and others. He and Garfinkle organized and promoted tax-oriented limited partnerships during the 1970's, including shelters relating to movies, master recordings, real estate, and mining. These partnerships fall into two distinct subgroups that we collectively refer to as the "S-J partnerships"[3] and the "Real Estate partnerships."[4]

Petitioner prepared and filed Federal income tax returns for the taxable years 1975, 1976, and 1979-82, but failed to file returns for 1977 and 1978. On May 31, 1984, petitioner filed documents with the Internal Revenue Service that purported to be Forms 1040, U.S. Individual Income Tax Returns for 1977 and 1978. These documents were not valid returns; they contained false statements concerning petitioner's liabilities for 1977 and 1978, and they were filed to mislead the Internal Revenue Service.

---

[3] The S-J partnerships include: S-J Mineral Associates, L.P.; S-J Mineral Associates II, L.P.; S-J Mineral Associates III, L.P.; INAS Associates, L.P. (an acronym for International Associates, L.P.); and G & O Associates.

[4] The Real Estate partnerships include: That Certain Encounter; Tudor Associates, Ltd. I; Tudor Associates, Ltd. II; Applewood Associates, Ltd.; Harrison Associates, Ltd.; O and G Associates, Ltd.; and Providence Place Associates, Ltd.

The promotion of the S-J partnerships was a fraudulent tax shelter promotion.  In a class action, the District Court entered a conclusion of law that petitioner and Garfinkle engaged in acts, practices, and a course of business that operated as a fraud and deceit upon purchasers of limited partnership interests in the S-J partnerships.[5]  Petitioner has previously pled guilty to crimes of fraud and deceit arising from the S-J partnerships, including:  (1) Mail fraud; (2) aiding, assisting, and advising in the preparation of an individual income tax return which was fraudulent as to material fact; and (3) willfully and knowingly conspiring to devise a scheme to defraud and to obtain money from the Internal Revenue Service by means of false representations.

For the years 1975 through and including 1982, petitioner failed to maintain complete and adequate books and records of his income-producing activities, and he failed to cooperate with respondent's agents in submitting his books and records to them for examination.  In addition, petitioner fraudulently and with intent to evade tax made or caused to be made false and misleading representations to agents of respondent during their investigation of entities with which petitioner was associated and for which he claimed deductions on his returns for the taxable years 1974-76 and 1979-81.

---

[5]     The class action referred to above was brought by investors in the S-J partnerships. Den Haene v. Inas Associates, L.P., No. 78 civ. 4360 (CES) (S.D.N.Y., filed Nov. 2, 1984).

With the intent to evade taxes, petitioner fraudulently claimed partnership losses from real estate, coal mining, movies, and diamond mining ventures on each of his purported returns for the years 1975 through 1981. Petitioner also fraudulently failed to report on his Federal income tax return for 1976, and his purported return for 1977, all or a substantial portion of the income he received during those years from the sale of limited partnership interests in the S-J partnerships. A part of the underpayment of tax required to be shown on his tax returns for each of the years 1975 through 1981 was due to fraud.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Pope & Talbot, Inc., & Subs. v. Commissioner, 104 T.C. 574, 575 (1995); Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); O'Neal v. Commissioner, 102 T.C. 666, 674 (1994) (quoting Kroh v. Commissioner, 98 T.C. 383, 389 (1992)).

The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be made in a manner most favorable to the party opposing summary

judgment. <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985). The opposing party cannot rest upon mere allegations or denials, but must set forth specific facts showing there is a genuine issue for trial. Rule 121(d); <u>O'Neal v. Commissioner</u>, <u>supra</u>; <u>Webb v. Commissioner</u>, T.C. Memo. 1996-50. However, the opposing party need not come forth with affidavits or other documentary evidence unless the moving party makes a prima facie showing of the absence of a factual issue. <u>Shiosaki v. Commissioner</u>, 61 T.C. 861 (1974); <u>Fason v. Commissioner</u>, T.C. Memo. 1996-138.

As we have noted above, under Rule 90(c), each statement set forth in a request for admissions served on a party is deemed admitted unless a response thereto is served upon the requesting party within 30 days after service of the request. <u>Alexander v. Commissioner</u>, 926 F.2d 197, 198-199 (2d Cir. 1991), affg. per curiam T.C. Memo. 1990-315; <u>Dahlstrom v. Commissioner</u>, <u>supra</u> at 817-818; <u>Freedson v. Commissioner</u>, 65 T.C. at 334-336. Summary judgment is appropriate where the facts deemed admitted pursuant to Rule 90(c) support a finding that there is no genuine issue as to any material fact. <u>Marshall v. Commissioner</u>, 85 T.C. at 272; <u>Morrison v. Commissioner</u>, 81 T.C. 644, 651-652 (1983).

<u>Other or Miscellaneous Income for 1976, 1977, and 1978</u>

In a notice of deficiency, respondent determined that petitioner had failed to report commission income in the amount of $1,684,916 on his 1976 Federal income tax return. Respondent also determined that petitioner had "failed to file a tax return"

for the years 1977 and 1978, and therefore failed to report other or miscellaneous income for those years in the respective amounts of $2,000,536 and $2,926,612.

Relevant portions of the record include the following. Petitioner admits that he sold interests in the S-J partnerships during 1976 and 1977. Petitioner admits that he received substantial amounts of cash from the sales proceeds of the limited partnership interests in the S-J partnerships. Petitioner cannot give an exact accounting of the amount of cash so received, or the time he received the cash. He failed to maintain books and records providing an accurate accounting of the cash he received from these sales. Nevertheless, he admits that he received "approximately $1,720,916". Petitioner admits that he fraudulently failed to report "all or a substantial portion of" the income he received during 1976 and 1977 from the sale of limited partnership interests in the S-J partnerships.

Respondent seeks partial summary judgment as to the amount of other or miscellaneous income for 1976 that she determined in the notice of deficiency, $1,684,916.[6] Petitioner's admissions establish that over a 2-year period, during 1976 and 1977, he received approximately $1,720,916 in commissions. However, these

_____

[6]    In the notice of deficiency respondent listed the source of payments by which she determined petitioner's unreported commission income. It is a list of bank deposits referencing the respective banks, account numbers, check numbers, check dates, and amounts. The underlying documentation concerning these items is not included in the record before us on this motion.

admissions fail to disclose exactly how much of that amount he received in 1976 as opposed to 1977, or how much he failed to report in 1976. Petitioner's deemed admissions do not allocate his commission income between 1976 and 1977, the years when petitioner admits that he sold interests in the S-J partnerships. The record before us on this motion does not include detailed information concerning petitioner's other or miscellaneous income for 1976. Consequently, while the record indicates that petitioner failed to report commission income in 1976, respondent has not made a prima facie showing of the amount of such income that petitioner failed to report that year.

As for taxable years 1977 and 1978, in 1984 petitioner filed documents with the Internal Revenue Service which purported to be Forms 1040 for those earlier years. On line 20 of his purported 1977 Form 1040, petitioner reported other income in the amount of $2,000,536. On line 20 of his purported 1978 Form 1040, petitioner reported other income in the amount of $2,926,612. Respondent determined that petitioner had failed to file returns for 1977 and 1978, and therefore that petitioner had failed to report other or miscellaneous income for those years in the respective amounts of $2,000,536 and $2,926,612.

With respect to the amount of petitioner's other or miscellaneous income, the relevant portions of the record for 1977 and 1978 are as follows. Petitioner contends in his petition that respondent's determinations of additional taxable

income for 1977 and 1978 (in addition to the other years in issue) are erroneous. Respondent asserts in her answer the same determinations that she made in the notices of deficiency. In his reply to respondent's answer, petitioner specifically denies respondent's determinations of taxable income for the years in issue, which includes her determinations of other or miscellaneous income. Petitioner's denial, in relevant part, states:

> Petitioner denies that he ever had any potentially taxable income even vaguely close to the amount alleged by Respondent, and that his total gross receipts for the periods in question totaled $12,210,610, exclusive of Deductions, as follows: [Emphasis added.]
>
>     * * *
>     1977 -    $2,022,392.00
>     1978 -    $2,926,612.00

We note that the amounts of taxable income denied by petitioner for 1977 and 1978 are the same amounts of other income petitioner reported on his purported Forms 1040 for 1977[7] and 1978.

From the record before us on this motion, we conclude that respondent has failed to make a prima facie case that there exists no genuine issue of material fact regarding petitioner's receipt of other or miscellaneous income in the respective amounts of $2,000,536 and $2,926,612 for taxable years 1977 and 1978. Although petitioner reported these same amounts as other

---

[7]    On his purported 1977 Form 1040, petitioner reported other income in the amount of $2,000,536, dividend income in the amount of $8,998, and interest income in the amount of $12,858, for a total amount of income of $2,022,392.

income on his purported returns for 1977 and 1978, respondent has determined and petitioner has admitted that the purported Forms 1040 he filed for taxable years 1977 and 1978 were not valid returns, and that petitioner did not otherwise file Federal income tax returns for 1977 and 1978.[8]  The relevant portions of the record are respondent's determinations, petitioner's contention that they are erroneous, respondent's pleading of the same determinations, and petitioner's specific denial of them. These documents do not establish a prima facie showing of the absence of a factual issue regarding petitioner's other or miscellaneous income for 1977 and 1978.

In accordance with the foregoing, we hold that genuine issues of material fact exist regarding petitioner's other or miscellaneous income for taxable years 1976, 1977, and 1978, and deny respondent's motion for partial summary judgment with respect to the amounts of petitioner's other or miscellaneous income for those years.

1976 and 1977 Loss Disallowance

In her notices of deficiency, respondent disallowed losses claimed by petitioner on his 1976 and purported 1977 Federal

---

[8]    We are not unmindful that petitioner's purported Forms 1040 arguably may have some probative value.  However, given the fraudulent nature of these returns and respondent's specific rejection of them, we consider them insufficient evidence to establish a prima facie showing of the absence of a factual issue regarding the amount of petitioner's other or miscellaneous income for 1977 and 1978.

income tax returns from G & O Associates (G & O) and S-J Mineral Associates III (S-J III) as follows:

| Year | Partnership | Loss Claimed |
|------|-------------|-------------|
| 1976 | S-J III | $6,979,298 |
| 1976 | G & O | 2,520,403 |
| 1977 | S-J III | 297,818 |
| 1977 | G & O | 98,298 |

In addition, respondent determined that S-J III and G & O earned income in 1977, and that petitioner's distributive shares thereof were $2,303,276 and $6,978,311, respectively. Petitioner admitted that the S-J III and G & O partnerships lacked economic substance and had no business purpose; that the losses he deducted from them are not allowable; and that his correct distributive share of ordinary income or loss from S-J III and G & O for each of the years 1976 and 1977 is zero. We find no genuine issue of material fact on this issue. We shall grant respondent's motion for partial summary judgment with respect to a finding that petitioner is not entitled to certain losses from the partnerships S-J Minerals Associates III, L.P. and G & O Associates for 1976 and 1977.

Mining Losses for 1977-81

In the notices of deficiency, respondent disallowed mining losses claimed by petitioner in the amount of $10 million on each of his purported Schedules C for the years 1977 and 1978, as well as his Schedules C for 1979 and 1980. Respondent also disallowed a mining loss claimed by petitioner in the amount of $100,000 on

his 1981 Schedule C.  Petitioner admitted that these losses related to an alleged diamond mining venture; that he did not own any diamond mining rights; and that he knew he did not own any diamond mining rights and was not entitled to any mining losses for the years 1977-81.  We find no genuine issue of material fact on this issue.  We shall grant respondent's motion for partial summary judgment with respect to a finding that petitioner is not entitled to deduct mining losses in the amount of $10 million for each of the years 1977 through 1980, and in the amount of $100,000 for 1981.

Net Operating Loss Carryovers

In the notices of deficiency, respondent disallowed net operating losses claimed by petitioner in the years 1976 through 1981 that purportedly arose from his interests in the Imperial Finance Tax Shelter Project (Imperial Finance), the S-J partnerships, the Real Estate partnerships, and his purported Schedule C mining activities.  In his reply to respondent's answer, petitioner admitted that he has carried forward some of these losses.

Petitioner admitted that the S-J partnerships' economic function was to create tax losses, that they lacked economic substance and had no business purpose, and that he is not entitled to the loss resulting from the flow through of any advance royalty "payment" by the S-J partnerships.  In the stipulation of settled issues, petitioner conceded that he is not

entitled to any losses arising from the Real Estate partnerships. Petitioner also is not entitled to any losses from Imperial Finance. In Fredkin v. Commissioner, T.C. Memo. 1986-154, affd. 870 F.2d 801 (1st Cir. 1989), this Court disallowed claimed royalty deductions flowing from the corporation Imperial Finance NV. By order dated July 21, 1993, the Court's opinion in the Fredkin case was deemed determinative of the Imperial Finance issues in this case. We find no genuine issue of material fact on this issue. We shall grant respondent's motion for partial summary judgment that petitioner is not entitled to carry forward certain net operating losses to 1976 through 1981.

Section 6653(b) Addition to Tax for Fraud

Section 6653(b) provides for the imposition of an addition to tax if any part of any underpayment of tax required to be shown on the return is due to fraud. Fraud has been described as an intent to evade taxes known to be owing by conduct intended to mislead, conceal, or prevent tax collection. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); McDonald v. Commissioner, T.C. Memo. 1996-87. Respondent has the burden of proving by clear and convincing evidence two elements: (1) The existence of an underpayment of tax for each year, and (2) that some part of the underpayment is due to fraud with an intent to evade tax. Sec. 7454(a); Rule 142(b); Hebrank v. Commissioner, supra.

- 16 -

Fraud is never imputed or presumed. <u>Beaver v. Commissioner</u>, 55 T.C. 85, 92 (1970). Fraudulent intent may be established by circumstantial evidence and reasonable inferences drawn from the record, including facts deemed admitted under Rule 90(c). <u>Clayton v. Commissioner</u>, 102 T.C. 632, 647 (1994); <u>Coninck v. Commissioner</u>, 100 T.C. 495, 499 (1993); <u>Marshall v. Commissioner</u>, 85 T.C. at 272; <u>Morrison v. Commissioner</u>, 81 T.C. 644, 651-652 (1983); <u>Alexander v. Commissioner</u>, T.C. Memo. 1990-315. Indicia of fraud include: Understating income, inadequate records, failing to file tax returns, failing to cooperate with tax authorities, and engaging in illegal activities. <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601.

The losses petitioner claimed from the S-J partnerships, the Real Estate partnerships, and his purported Schedule C mining activities contributed to underpayments for the years 1975 through 1981. Petitioner admitted that his claim of partnership losses from real estate, coal mining, movies, and diamond mining ventures on each of his purported returns for the years 1975 through 1981 was fraudulent with the intent to evade taxes. Petitioner further admitted that, with the intent to evade tax, he fraudulently claimed $100,000 in losses from mining on his 1981 return, and $10 million on each of his 1979 and 1980 returns, as well as on the documents purporting to be returns for the years 1977 and 1978.

On his 1976 return, petitioner understated his income, and he admitted that all or a part of the understatement of tax required to be shown on his return for that year was due to fraud. Petitioner failed to file Federal income tax returns for the years 1977 and 1978. In 1984, he filed documents intended to mislead the Internal Revenue Service that purported to be Forms 1040 for 1977 and 1978. Said documents were not valid returns and contained false statements concerning his liabilities for those years. Finally, petitioner failed to cooperate with respondent's agents in submitting his books and records to them for examination, as well as those of the S-J partnerships. We find no genuine issue of material fact on this issue. We shall grant respondent's motion for partial summary judgment with respect to the section 6653(b) addition to tax for fraud for each of the years 1975-81.

## Statute of Limitations

Section 6501(c) provides that in the case of a false or fraudulent return filed with the intent to evade tax, or a willful attempt in any manner to defeat or evade tax, or a failure to file a return, the tax may be assessed at any time. The record discloses that petitioner filed false or fraudulent returns for the years 1975, 1976, 1979, and 1981, that he attempted to defeat or evade tax for those same years, as well as for 1977 and 1978, and that he failed to file tax returns for the years 1977 and 1978. We find no genuine issue of material fact

on this issue.  We shall grant respondent's motion for partial summary judgment with respect to a finding that the notices of deficiency herein were timely mailed to petitioner and that assessment is not time barred.  Secs. 6213, 6501(c); see Alexander v. Commissioner, T.C. Memo. 1990-315.

We shall grant respondent's Motion for Partial Summary Judgment with respect to all of the issues raised therein, except the issue of other or miscellaneous income determined for taxable years 1976, 1977, and 1978.

In order to reflect the foregoing,

An appropriate order will be issued granting respondent's Motion for Partial Summary Judgment in part and denying her motion in part.